IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JASON PAUL SHAEFER**, <br><br> Plaintiff, <br><br> v. <br><br> **MULTNOMAH COUNTY, ANGELINA PLATAS, and DEFENDANTS 1-10,** <br><br> Defendants. | Case No. 3:18-cv-00039-SI <br><br> **OPINION AND ORDER** |

Jason Paul Schaefer, *pro se*.

Jenny M. Madkour, County Attorney for Multnomah County Oregon, and Jacqueline Kamins, Senior Assistant County Attorney, MULTNOMAH COUNTY ATTORNEY'S OFFICE, 501 S.E. Hawthorne Blvd., Suite 500, Portland, Oregon 97214. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Jason Schaefer brings this lawsuit under 42 U.S.C. § 1983 against Multnomah County, Dr. Angelina Platas, and ten unknown defendants ("Defendants") alleging violations of his Eighth and Fourteenth Amendment rights while he was in custody at the Multnomah County Detention Center ("MCDC"). Plaintiff claims that Defendants denied his repeated requests for stronger narcotic pain medications and these denials amounted to deliberate indifference to Plaintiff's serious medical condition. Defendants move for summary judgment on all of

PAGE 1 – OPINION AND ORDER

Plaintiff's claims. Because the Court concludes that Plaintiff has not met the standard of deliberate indifference to his serious medical needs required for liability under 42 U.S.C. § 1983, Defendant's Amended Motion for Summary Judgment (ECF 63) is GRANTED.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S.Ct. 2056, 2066-67 (2014); *Krainski v. Nevada ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform

their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second step is to determine "whether the right was clearly established." *Id*. The constitutional issue, however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. Regardless of whether a constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

# BACKGROUND[1]

On October 11, 2017, Plaintiff's left hand was severely injured when an explosive device detonated. He underwent a surgical procedure at Legacy Emanuel Hospital to remove his thumb, index finger, and a portion of his middle finger from his left hand. Plaintiff was prescribed Diluadid, a strong narcotic pain medication, also known as hydromorphone, as well as acetaminophen and ibuprofen. After the surgery, Plaintiff spent a week at the Washington County Jail. One week later, Plaintiff had a follow-up appointment with doctors at Summit Orthopedics and was then transferred to the medical unit at MCDC. The orthopedist at Summit indicated that Plaintiff's hand was healing well and determined that Plaintiff should begin to reduce his pain medications. The doctors changed Plaintiff's pain medication from Dilaudid, which is typically only prescribed in a hospital setting, to hydrocodone, also known as Norco, another narcotic pain medication that is not as strong.

For several days, Plaintiff appeared to be tolerating the pain with minimal discomfort. Dr. Angelina Platas, saw Plaintiff on October 20, 2017 and spoke to Plaintiff about the importance of weaning him off of pain medications to reduce the risk of addiction, increase the rate of the healing process, increase physical activity, and reduce the risk that Plaintiff would suffer common side effects of long-term narcotics use, such as anxiety and depression. *See* Platas Decl. ¶ 6. Dr. Platas informed Plaintiff that Multnomah County maintains a policy of discontinuing the use of narcotics seven days after surgery. Plaintiff requested increased pain medication but instead received an arm sling to keep his hand elevated. On October 21, Plaintiff

---

[1] These facts are drawn from Defendants' motion for summary judgment, the declaration of Dr. Seale, the declaration of Dr. Platas, and the various declarations submitted by Plaintiff. Defendants cite repeatedly to Exhibit 3, which purportedly contains Plaintiff's medical records, among other relevant information. The Court notes that the document filed under seal as Exhibit 3 begins on page 90 of 182, and the Court cannot locate the information that Defendant attributes to pages 1-89 of that Exhibit.

again requested increased pain medication and refused to allow jail staff to change the dressing on his hand. Seale Decl. ¶ 15. The following morning, Plaintiff allowed a nurse to clean and re-dress his wound, and the nurse noted that Plaintiff appeared to tolerate the dressing change without significant pain. *Id.* at ¶ 17. Plaintiff requested increased pain medication and declined the nurse's offer of ice and elevation as an alternative means to reduce pain. *Id.* at ¶ 18. A nurse responded by letter to Plaintiff's request for increased pain medication and denied his request. After that, Plaintiff wrote a letter to Dr. Platas that contained threatening content, and it was determined that Dr. Platats would no longer treat Plaintiff in person. *Id.* ¶¶ 19-20.

Dr. Michael Seale examined Plaintiff on October 25, 2017. Plaintiff requested an increase in pain medication and Dr. Seale ordered an increase in Norco. *Id.* ¶ 25. Later that day, Plaintiff had an appointment with doctors at Legacy Emanuel Trauma Surgery, and the doctors requested that Plaintiff be weaned off of Norco. *Id.* ¶ 26.

The following day, October 26, 2017, a nurse observed that Plaintiff had removed the dressing on his hand and saw that the wound was healing well and there was no sign of infection. *Id.* ¶ 27. The nurse cleaned and dressed the wound and Plaintiff appeared to tolerate the dressing change without significant pain. On October 28 and again on October 30, a nurse cleaned and re-dressed Plaintiff's wound. *Id.* ¶¶ 28-32.

On November 1, Plaintiff underwent a second, previously-scheduled surgery to complete the amputation of the middle finger on his left hand. Plaintiff asserts that this second surgery was due to an infection caused by inadequate medical treatment he received while at MCDC. The surgical notes, however, indicate that the finger was amputated due to "significant bone missing . . . significant skin missing . . . soft tissue loss over the top of the finger and . . . the constellation of injuries involving the finger." The surgical summary noted that Plaintiff's hand wounds had

PAGE 5 – OPINION AND ORDER

completely closed and there was no evidence of blocked blood flow. The surgeon did not believe that any follow-up with Plaintiff after the surgery would be necessary. Dr. Seale ordered oxycodone, a strong opiate narcotic, Gabapentin, another prescription pain medication, and ibuprofen, but discontinued Norco. Dr. Seale also ordered ice packs and continued wound care.

The next morning, November 2, 2017, during a dressing change by a nurse, Plaintiff began demanding Dilaudid. *Id.* ¶ 35. Dr. Platas ordered an increase in oxycodone through November 6th, and ordered a continuation of Plaintiff's non-narcotic pain medications Gabapentin and Ibuprofen. *Id.* Plaintiff continued to request Dilaudid and Norco pain medication throughout the following days. *Id.* ¶¶ 35-38. Plaintiff began declining wound care from nurses and from Dr. Seale. *Id.* ¶ 39. On November 7, one week after Plaintiff's second surgery, Dr. Seale ordered that Plaintiff begin to taper off of oxycodone. Plaintiff continued to refuse medical treatment, and specifically wound care, although nurses were able to observe that his wound appeared to be healing well. *Id.* ¶ 44. On November 17, a nurse observed that Plaintiff's wound was clean, dry, and intact and the skin around the wound appeared to be healed. The nurse advised that Plaintiff could take one fewer oxycodone dose. *Id.* ¶ 45.

On November 24, 2017, Plaintiff requested more aspirin and Tylenol. Dr. Platas ordered an increase in Tylenol three times daily. *Id.* ¶ 46. Plaintiff was fully weaned off of narcotics on November 29, 2017. On December 7, 2017, Plaintiff was released into the custody of the United States Marshals Service.[2]

---

[2] Plaintiff returned to MCDC custody in January 2018, but his claims appear to stem exclusively from the period of detention from October 2017 through December 2017. See Compl. ¶¶ 12, 27.

# DISCUSSION

The Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).[3] Courts, however, apply the same standards in both cases. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010). Courts "have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a 'deliberate indifference' standard." *Id.* at 1241. This standard contains both an objective and a subjective element. To meet the objective element in the context of a claim for failure to provide medical care a plaintiff must establish a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need is the kind of injury that "a reasonable doctor or patient would find important and worthy of comment or treatment; . . . that significantly affects an individual's daily activities; or [causes] chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

The subjective inquiry requires a showing that a corrections officer acted with deliberate indifference to a plaintiff's serious medical needs. *Id.* at 1132. An official's deliberate state of mind is satisfied by showing that the official (1) purposefully acted or failed to respond to a

---

[3] Defendants argue that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), because he failed to submit medical grievances and appeal them to the highest level available at the MCDC. Defendants initially represented that Plaintiff filed no medical grievances, but a subsequent search revealed four additional grievances. Furthermore, the Court notes that several documents that appear to be grievances are included in Exhibit 3 (filed under seal), though inconsistent with Defendants' initial representation that Plaintiff filed no grievances. Because the Court finds Defendants' location and production of grievances to be somewhat unreliable, and the Court concludes that Plaintiff's constitutional rights were not violated, the Court declines to resolve the exhaustion issue.

prisoner's pain or possible medical need; and (2) the harm the prisoner suffered was caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official cannot be found liable for deliberate indifference if the official responded reasonably to the prisoner's needs. *Borden v. Mauity*, 2018 WL 2208206, at *3 (D. Or. May 11, 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

Plaintiff has satisfied the objective test, as several fingers on his left hand were amputated after they were injured in an explosion. Losing several fingers clearly constitutes an injury that requires serious medical treatment, and Defendants do not argue that Plaintiff's medical needs were not serious. After his first surgery injury, Plaintiff required a second surgery to remove an additional finger on his left hand. This constitutes a serious medical need.

Plaintiff cannot, however, establish that Defendants were deliberately indifferent to his medical needs. Plaintiff argues that his pain management needs were not adequately addressed, that he was harmed by MCDC's "no-narcotics" policy, and that inadequate care at the MCDC led to the amputation of his middle finger. On this third point, Plaintiff's allegations are directly contradicted by the surgical notes and medical evidence submitted with Defendants' motion for summary judgment. The Court finds that Plaintiff has not demonstrated that there is a genuine dispute of material fact regarding the reasons for the amputation of his middle finger. The surgical notes indicate that Plaintiff's finger was not infected, and the finger was amputated due to medical necessity and not as a result of deliberate indifference by corrections officials.

Plaintiff's remaining arguments that he was harmed by the "no-narcotics" policy and that his pain management needs were not adequately addressed fail to establish a genuine dispute of material fact. The Ninth Circuit applies "[c]ertain principles" to "cases such as this one which involve choices between alternative courses of treatment." *Jackson v. McIntosh*, 90 F.3d 330,

PAGE 8 – OPINION AND ORDER

332 (9th Cir. 1996). The Ninth Circuit has held that "a plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another was insufficient, as a matter of law, to establish deliberate indifference." *Id.* (quoting *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989)). If the plaintiff's claims are based "on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference[] as a matter of law." *Id.*; *see Estelle*, 429 U.S. at 107-08.

For Plaintiff to prevail under this standard, he must show that the course of treatment that the doctors chose was medically unacceptable under the circumstances, and he must show that in choosing the course of treatment that they did, Defendants demonstrated a conscious disregard of an excessive risk to his health. *Farmer*, 511 U.S. at 844.

When Plaintiff was initially treated for his hand wound immediately after the explosion, doctors prescribed him Dilaudid, a very strong narcotic medication. Jail officials, however, realize that powerful narcotics and opiates carry serious risks, including addiction, and a week after his initial surgery doctors adjusted Plaintiff's pain medication accordingly. The record demonstrates that MCDC and Dr. Platas provided Plaintiff with pain medication, including Tylenol, aspirin, oxycodone, hydrocodone, and Gabapentin, as well as non-medicative pain relief such as ice packs and a sling to keep his hand elevated. *See* Seale Decl. ¶¶ 5, 8, 15, 21. Despite that fact that Defendants maintain a "guideline" policy of not prescribing narcotics for more than seven days, the medical records indicate that Plaintiff was prescribed narcotic medications of some form from the day he arrived at MCDC until November 29, 2017, a period lasting more than 40 days. Several times in response to Plaintiff's requests for increased pain medication, Plaintiff's doctors, including Dr. Seale and Dr. Platas, increased Plaintiff's dosages of pain

medication. *See* Seale Decl. ¶¶ 21, 25, 26. Extra acetaminophen was added to Plaintiff's hydrocodone prescription on October 23, 2017, and his hydrocodone was increased on October 25, 2017. Additionally, Plaintiff was prescribed Gabapentin, ibuprofen, and oxycodone during his recovery from the second surgery. Plaintiff's oxycodone prescription was increased at Plaintiff's request, but was then tapered off beginning one week after surgery on November 7, 2017. When Plaintiff's oxycodone was decreased, his Tylenol was increased to manage his pain. Seale Decl. ¶54.

This course of action does not constitute a deliberate indifference. Plaintiff states that he repeatedly asked for stronger medications, including Opana and Fentanyl, which he believed were necessary to manage his pain. That Plaintiff believed other medications would have been more effective is not enough to establish liability or even create a genuine issue for trial. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Defendants have established that their decision to treat Plaintiff's pain with oxycodone, Gabapentin, and ibuprofen, instead of Plaintiff's preferred treatment of stronger, highly addictive narcotics, did not disregard an excessive risk to inmate health and safety. *See Toguchi*, 391 F.3d at 1059. Defendants had legitimate medical reasons for weaning Plaintiff off of narcotic medications, including concerns that Plaintiff, who has a history of heroin addiction, could become again addicted to narcotics. In light the high risks associated with long-term narcotics use, Defendants' chosen course of medical treatment was reasonable. At most, Plaintiff has

demonstrated a difference of medical opinion regarding his treatment, and a difference of medical opinion "does not amount to a deliberate indifference to [Plaintiff's] serious medical needs." *Sanchez*, 891 F.2d at 242. Thus, Plaintiff has not shown a genuine issue for trial to establish a claim under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 107.

The Court concludes that Defendants did not violate Plaintiff's Fourteenth Amendment rights based on Defendants' treatment of Plaintiff's hand pain because the evidence fails to show that Defendants' treatment using pain medications other than Plaintiff's preferred medications demonstrates deliberate indifference to Plaintiff's pain. *See Gieck v. Levin*, 2010 WL 235084, at *9-10 (S.D. Cal. Jan. 21, 2010). Because the Court has concluded that Defendants are entitled to summary judgment on Plaintiff's claims under the Fourteenth Amendment, the Court does not reach the remaining question under *Saucier* – whether the right at issue was clearly established.

## CONCLUSION

Defendants' Amended Motion for Summary Judgment (ECF 63) is GRANTED. This case is dismissed.

**IT IS SO ORDERED**.

DATED this 18th day of March, 2019.

>  /s/ *Michael H. Simon*
>  Michael H. Simon
>  United States District Judge